IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AES SPARROWS POINT LNG, LLC, *et al.*,  *

     Plaintiffs,                *

      v.                 *

                           Civil Action No.: RDB-07-325

JAMES T. SMITH, JR., *et al.*,     *

     Defendants.        *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM OPINION**

Plaintiffs AES Sparrows Point LNG, LLC and Mid-Atlantic Express, LLC ("Plaintiffs") have brought this action for declaratory and injunctive relief against James T. Smith, Jr., in his official capacity as the County Executive of Baltimore County, William J. Wiseman, III, in his official capacity as the Zoning Commissioner for Baltimore County, and Baltimore County, Maryland (collectively, "Defendants" or "the County"). The Plaintiffs seek a declaration that an amendment to section 105 of the Baltimore County Zoning Regulations, as set forth in Bill 9-07 ("the Zoning Amendment"), prohibiting the siting of liquified natural gas ("LNG") facilities in the Chesapeake Bay Critical Areas in Baltimore County, is preempted under the Supremacy Clause of the United States Constitution[1] by the Natural Gas Act, 15 U.S.C. §§ 717, *et seq.* (2007), as amended by the Energy Policy Act of 2005, Pub. L. No. 109-58, § 311, 119 Stat. 594, 685 (2005). Pending before this Court are the parties' cross-motions for summary judgment. The issues have been fully briefed by the parties and a hearing was held by this Court on June 6, 2007.

---

[1] U.S. CONST. art. VI.

The County initially attempted to regulate LNG facilities by the passage of a zoning ordinance that prohibited the siting of LNG facilities within a certain distance of residential and commercial areas.  This Court held that this earlier ordinance was unenforceable because it was preempted under the Supremacy Clause of the United States Constitution by the Natural Gas Act. *See AES Sparrows Point LNG, LLC v. Smith*, 470 F. Supp. 2d 586 (D. Md. 2007) ("*AES I*"). In that earlier opinion, this Court noted that the 2005 amendments to the Natural Gas Act expressly reserve to the states their rights pursuant to three environmental statutes: the Coastal Zone Management Act of 1972, 16 U.S.C. §§ 1451, *et seq*., the Clean Air Act, 42 U.S.C. §§ 4201, *et seq*., and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq*.[2]  *Id*. at 597.  The Zoning Amendment at issue in this case, unlike the first zoning ordinance, only prohibits the construction of LNG facilities in Baltimore County's environmentally sensitive Chesapeake Bay Critical Areas and has now been incorporated into the State of Maryland's Coastal Zone Management Act program.  For the reasons that follow, Defendants' Motion for Summary Judgment will be GRANTED, and the Plaintiffs' Motion for Summary Judgment will be DENIED.  This Court declares that the Zoning Amendment, as set forth in Bill 9-07, is not preempted by the Natural Gas Act and is within the delegated authority of the State of Maryland and Baltimore County under the Coastal Zone Management Act.

<u>BACKGROUND</u>

**I.      Factual and Procedural Background**

The facts of this case were previously noted in this Court's opinion in *AES I*.  Plaintiff

---

[2] The Federal Water Pollution Control Act is commonly referred to as the Clean Water Act.

AES Sparrows Point LNG, LLC ("AES") entered into an option agreement on November 3, 2005, to lease a site at 600 Shipyard Road in Baltimore County, Maryland, in order to construct an LNG terminal and to import, store, and regasify LNG.  (Am. Compl. Ex. 1.)  Pursuant to this option agreement, Mid-Atlantic Express, LLC proposes to construct and operate an 87-mile 30-inch outside diameter natural gas pipeline extending from the Sparrows Point site to interconnections with existing natural gas pipeline systems and terminating in Eagle, Pennsylvania.  (*Id.* ¶ 13.)  On March 24, 2006, Plaintiffs initiated the pre-filing process necessary to file a formal application with the Federal Energy Regulatory Commission ("FERC") to build an LNG terminal at the Sparrows Point site.  (*Id.* at Ex. 3.)

Upon hearing of AES's plans, local groups and elected officials expressed concern about the negative effects of the proposed plant on the surrounding community and the environment. In response to public opposition, on June 19, 2006, the Baltimore County Council approved Bill 71-06, amending section 256.4 of the Baltimore County Zoning Regulations.  (*Id.* at Ex. 6.)  The ordinance provided that an LNG terminal could only be constructed with a "special exception" and had to be at least 5 miles from residential zones and 500 feet from business zones.  (*Id.*)  The ordinance would have prevented the Plaintiffs from constructing an LNG facility at Sparrows Point.

On September 22, 2006, Plaintiffs filed a lawsuit in this Court against James T. Smith, Jr., in his official capacity as the County Executive of Baltimore County, William J. Wiseman, III, in his official capacity as the Zoning Commissioner for Baltimore County, and Baltimore County seeking declaratory and injunctive relief on the grounds that Bill 71-06 violated the Supremacy Clause of the United States Constitution and was preempted by the Natural Gas Act.

3

The Defendants filed a motion to dismiss for lack of ripeness and subject matter jurisdiction, and the Plaintiffs filed a motion for summary judgment. After a hearing held on January 10, 2007, this Court issued an opinion granting the Plaintiffs' motion for summary judgment and denying the Defendants' motion to dismiss. *AES I*, 470 F. Supp. 2d 586 (D. Md. 2007). This Court declared the zoning ordinance to be unconstitutional under the Supremacy Clause and enjoined the County from enforcing it. *Id*. at 601.

On February 5, 2007, Baltimore County passed Bill 9-07 ("the Zoning Amendment"), which amends section 105 of the Baltimore County Zoning Regulations by adding LNG terminals to the list of prohibited uses in Chesapeake Bay Critical Areas.[3] (Am. Compl. Ex. 9 [hereinafter "Bill 9-07"].) The bill defines an LNG facility in section 101 as

> [a] natural gas facility located onshore or in state waters that is used to receive, unload, load, store, transport, gasify, regasify, liquefy, or process natural gas that is imported to the United States from a foreign country, exported to a foreign country from the United States, or transported in interstate commerce by a waterborne vessel.

*Id*. There is no dispute that the Zoning Amendment would prevent AES from constructing an LNG facility at the proposed Sparrows Point site, as the site is located within Baltimore County's Chesapeake Bay Critical Area.[4]

---

[3] As discussed in more detail *infra*, the Chesapeake and Atlantic Coastal Bays Critical Area Protection Program is one component of Maryland's Coastal Zone Management Act plan. Local jurisdictions within the State have the delegated authority to create individual protection programs covering their Critical Areas, subject to approval by a statewide Critical Area Commission. Md. Code Ann., Nat. Res. § 8-1808(a) (LexisNexis 2000 & Supp. 2005).

[4] The Chesapeake Bay Critical Area includes the "waters of and lands under the Chesapeake Bay and its tributaries" and "[a]ll land and water areas within 1,000 feet beyond the landward boundaries of State or private wetlands. . . ." Md. Code Ann., Nat. Res. § 8-107(a) (LexisNexis 2000 & Supp. 2005).

AES and Mid-Atlantic Express filed suit in this Court on February 6, 2007 seeking essentially the same injunctive and declaratory relief as in *AES I*.  The Plaintiffs moved for a temporary restraining order ("TRO") two days later to prevent the County from halting the project pursuant to its authority under the Coastal Facilities Review Act.[5]  A hearing was conducted on February 9, 2007, and this Court granted the Plaintiffs' motion for a TRO at that time, enjoining the County from certifying to the Maryland Department of the Environment that the proposed LNG facility would not meet local zoning regulations and enjoining enforcement of Bill 9-07.  (Paper No. 6.)  By Consent Order dated February 21, 2007, the TRO was to remain in effect until this Court ruled on the pending motions for summary judgment.  (Paper No. 8.)

Meanwhile, on February 9, 2007, Baltimore County submitted a request to Maryland's Critical Area Commission for the Chesapeake and Atlantic Coastal Bays ("Critical Area Commission" or "the Commission") seeking to amend the County's Critical Area protection program to include Bill 9-07's restriction on LNG siting in coastal areas.  (*See* Carroll Aff. Ex A.)  On May 2, 2007, a four-person panel recommended to the Commission that Baltimore County's request to amend its local Critical Area protection program should be denied.  (*See* Defs.' Status Report Att. 1 at 5 (Paper No. 21).)  The panel cited concerns that the Zoning Amendment was unenforceable because this Court had enjoined it and because it had to be

---

[5] As discussed in more detail *infra*, the Coastal Facilities Review Act ("CFRA") requires that the county in which a proposed facility would be located must certify to the Maryland Department of the Environment that the project would comply with local land use regulations or else the "application process shall terminate."  Md. Code Ann., Envir. § 14-507 (LexisNexis 1996 & Supp. 2005); COMAR 26.22.01.06 (2007).  Thus, Baltimore County could halt the CFRA permit process for AES by certifying that the proposed LNG facility would not comply with the local zoning regulations, as amended by Bill 9-07.  Plaintiffs moved for a TRO in order to prevent the County from exercising its authority under CFRA while this lawsuit was still pending.

approved by the National Oceanic and Atmospheric Administration ("NOAA").  (*Id.*)  In

response to the panel's report, Baltimore County asked the Commission to "table further action."

(Pls.' Request for Hearing Att. 1 (Paper No. 22).)

    The Plaintiffs filed a Motion for Summary Judgment on February 26, 2007 (Paper No.

12) and an Amended Complaint the following day (Paper No. 13).  The Defendants filed a

Motion for Summary Judgment on March 19, 2007.  (Paper No. 16.)  While this Court was

conducting a hearing on the cross-motions for summary judgment on June 6, 2007, the Critical

Area Commission, having reopened its review of Baltimore County's request, unanimously

approved the adoption of the Zoning Amendment in the County's Critical Area protection plan.

(*See* Defs.' Post-Hearing Mem. Ex. 1 (Paper No. 27).)

## II.    Legal Framework

### A.    Natural Gas Act

    Under the Natural Gas Act ("NGA"), a party seeking to construct a liquefied natural gas

("LNG") terminal must first obtain authorization from the Federal Energy Regulatory

Commission ("FERC").  15 U.S.C. § 717b(a) (2007).  FERC created an extensive pre-filing

process in which an applicant must submit all pertinent information about the proposed site and

building plans, any state and local agencies with permitting authority, the applicant's plans to

receive input from the public, and additional matters.  18 C.F.R. § 157.21 (2007).  Applicants

must also comply with the requirements of the National Environmental Policy Act of 1969, 42

U.S.C. §§ 4321, *et seq*. (2007), by examining the impact the facility would have on the

environment.  15 U.S.C. § 717b-1(a) (2007).  After the applicant completes the pre-filing process

and submits a formal application, FERC consults with a designated state agency on state and

local safety issues, including "(1) the kind and use of the facility; (2) the existing and projected

population and demographic characteristics of the location; (3) the existing and proposed land

use near the location; (4) the natural and physical aspects of the location; (5) the emergency

response capabilities near the facility location; and (6) the need to encourage remote siting." *Id.*

§ 717b-1(b). It is undisputed that this process can take a considerable period of time at

substantial monetary cost.

The NGA was amended in 2005 by the Energy Policy Act of 2005, Pub. L. No. 109-58, §

311, 119 Stat. 594, 685 (2005). Congress added two provisions that are particularly relevant to

this case. The first provision gives FERC "exclusive authority to approve or deny an application

for the siting, construction, expansion, or operation of an LNG terminal." 15 U.S.C. §

717b(e)(1) (2007). This provision was the focus of this Court's earlier opinion in *AES I*.

However, the second provision specifically states that "nothing in [the NGA] affects the rights of

States under-- (1) the Coastal Zone Management Act of 1972 (16 U.S.C. §§ 1451, *et seq.*); (2)

the Clean Air Act (42 U.S.C. §§ 4201, *et seq.*); or (3) the Federal Water Pollution Control Act

(33 U.S.C. §§ 1251, *et seq.*)." 15 U.S.C. § 717b(d) (2007). In its earlier opinion in *AES I*, this

Court noted the legislative history of the 2005 amendments to the NGA and the testimony of the

general counsel of FERC. 470 F. Supp. 2d at 597. That testimony and legislative history

directly addressed and noted the continuing state authority over the siting of LNG terminals

pursuant to the Coastal Zone Management Act and the two other environmental statutes. *Id.*

**B.      Coastal Zone Management Act**

The Coastal Zone Management Act ("CZMA") was enacted in 1972 to "preserve,

protect, develop, and where possible, to restore or enhance, the resources of the Nation's coastal

zone for this and succeeding generations. . . ." 16 U.S.C. § 1452 (2007). It established a long-standing policy insuring the involvement of local and state officials in the protection of coastal areas. States play an integral role in carrying out this Congressional policy by adopting a coastal management program "setting forth objectives, policies, and standards to guide public and private uses of lands and waters in the coastal zone." *Id*. § 1453(12). The programs must be submitted to the Secretary of Commerce for approval, and states can receive federal funding to implement their plans subject to certain restrictions. *Id*. §§ 1454-55b. After receiving the Secretary of Commerce's approval, the states have discretion to modify and amend their CZMA plans, as enacted at the statewide and local level. Only formal changes to the original, statutory CZMA plan must be approved by the Secretary of Commerce. *Id*. § 1453(12).

### C. Maryland's Coastal Management Program

Pursuant to its authority under the CZMA, Maryland enacted a Coastal Management Program ("MCMP") which received approval from the Secretary of Commerce in 1978. (*See* Defs.' Reply Ex. 1; Carroll Aff. ¶ 9.) The MCMP "is referred to as a 'networked' program, whereby several regulatory agencies and statutory enforcement mechanisms are linked to provide a framework for making and implementing land use decisions in the State's coastal zones." (Carroll Aff. ¶ 9.) Two such enforcement mechanisms are particularly relevant to this lawsuit: the Coastal Facilities Review Act, Md. Code Ann., Envir. §§ 14-501, *et seq*. (LexisNexis 1996 & Supp. 2005), and the Chesapeake and Atlantic Coastal Bays Critical Area Protection Program, Md. Code Ann., Nat. Res. §§ 8-1801, *et seq*. (LexisNexis 2000 & Supp. 2005).

### 1. Coastal Facilities Review Act

Under the Coastal Facilities Review Act ("CFRA"), a company must obtain a permit from the Maryland Department of the Environment before constructing a "facility" within the State's coastal areas.  Md. Code Ann., Envir. § 14-503(a) (LexisNexis 1996 & Supp. 2005).  A "facility" includes "[a]ny pipeline carrying crude oil or natural gas ashore from offshore sources" as well as "[a]ny facility for the processing, transmission, or storage of natural gas. . . ." *Id*. § 14-502(e).  The permitting process includes a lengthy application, and the Department of the Environment designates a party to research and write a statement regarding the project's "economic, fiscal, and environmental impact."  *Id*. § 14-506(a)-(b).  Local governments also play a role in the process:

> The application shall not be processed further nor shall the analysis required be undertaken until the county government wherein the facility is proposed to be located or wherein the pipeline will terminate has certified to the Department [of the Environment] that all local land use classifications, including zoning, special exceptions, variances or conditional uses, necessary for the location and operation of the proposed facility have been or will be granted.

*Id*. § 14-506(c).  A county can certify that the proposed project will be approved or denied, or it can postpone rendering a decision.  COMAR 26.22.01.06(A) (2007).  The county's role is significant because "[i]f the county notifies the State of its denial, then the application process shall terminate," effectively preventing the facility from being built.  COMAR 26.22.01.06(C) (2007).

## 2. Critical Area Protection Program

The Chesapeake and Atlantic Coastal Bays Critical Area Protection Program ("CAPP") was enacted to curb the "harmful" effects of human activity on the Chesapeake Bay and its tributaries by "minimiz[ing] damage to water quality and natural habitats."  Md. Code Ann., Nat.

Res. § 8-1801 (LexisNexis 2000 & Supp. 2005).  CAPP created the Critical Area Commission

for the Chesapeake and Atlantic Coastal Bays ("Critical Area Commission" or "the

Commission") within the Maryland Department of Natural Resources to implement the program.

*Id*. § 8-1803.  Local jurisdictions "have primary responsibility for developing and implementing

a program, subject to review by the Commission."  *Id*. § 8-1808(a).  A local Critical Area

protection program must include

> those elements which are necessary or appropriate: (1) To minimize
> adverse impacts on water quality that result from pollutants that are
> discharged from structures or conveyances or that have run off from
> surrounding lands; (2) To conserve fish, wildlife, and plant habitat;
> and (3) To establish land use policies for development in the
> Chesapeake Bay Critical Area or the Atlantic Coastal Bays Critical
> Area which accommodate growth and also address the fact that, even
> if pollution is controlled, the number, movement, and activities of
> persons in that area can create adverse environmental impacts.

*Id*. § 8-108(b).  Of particular relevance to this lawsuit, a local jurisdiction's program should

include "new or amended provisions of the jurisdiction's . . . [z]oning ordinances or regulations"

in order to achieve those three goals.  *Id*. § 8-108(c).

## STANDARD OF LAW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil

Procedure when there is no genuine issue as to any material fact, and the moving party is plainly

entitled to judgment in its favor as a matter of law.  *Nat'l City Bank of Indiana v. Turnbaugh*,

463 F.3d 325, 329 (4th Cir. 2006).  In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court

explained that, in considering a motion for summary judgment, "the judge's function is not

himself to weigh the evidence and determine the truth of the matter but to determine whether

there is a genuine issue for trial."  477 U.S. 242, 249 (1986).  This Court has previously

recognized that a case that presents a pure question of law as to federal preemption should be resolved at the summary judgment stage. *Nat'l City Bank of Indiana v. Turnbaugh*, 367 F. Supp. 2d 805, 811 (D. Md. 2005), *aff'd*, 463 F.3d 325, 329 (4th Cir. 2006); *see also Retail Indus. Leaders Ass'n v. Fielder*, 435 F. Supp. 2d 481 (D. Md. 2006), *aff'd*, 475 F.3d 180 (4th Cir. 2007).

Where, as here, both parties file motions for summary judgment, the court applies the same standards of review. *Monumental Paving & Excavating, Inc. v. Penn. Mfrs.' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999) (citing *ITCO Corp. v. Michelin Tire Corp.,* 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment – even where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied,* 469 U.S. 1215 (1985)).  The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.,* 627 F. Supp. 170, 172 (D. Md. 1985).

## ANALYSIS

Plaintiffs AES Sparrows Point LNG, LLC and Mid-Atlantic Express, LLC have moved for summary judgment on the grounds that the Baltimore County Zoning Amendment (1) is preempted by the Natural Gas Act and (2) is unconstitutional on its face because it violates the dormant Commerce Clause.[6]  Defendants James T. Smith, Jr., William J. Wiseman, III, and

---

[6] The Commerce Clause provides "Congress shall have Power To . . . regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."  U.S. Const. art. I, § 8, cl. 3.  Although the Commerce Clause expressly confers power on Congress to regulate interstate and foreign commerce, the "dormant" Commerce Clause implicitly restricts states from placing an undue burden on interstate and foreign commerce.  *See Beskind v. Easley*, 325 F.3d

Baltimore County have also moved for summary judgment, arguing that the Zoning Amendment was enacted pursuant to the State's Coastal Zone Management Act ("CZMA") plan and, therefore, falls within the NGA's exception for states' rights under the CZMA and two other environmental statutes.

I.      **Preemption**

In *AES I*, this Court concluded that the first zoning ordinance was preempted by the NGA under all three theories of preemption: express, field, and conflict. *AES I*, 470 F. Supp. 2d at 596-600. Plaintiffs contend that the Zoning Amendment at issue in this case is preempted by the NGA under the same reasoning. However, Defendants note that the NGA's exception reserves to the states their authority under three federal environmental statutes. Specifically, they argue that the Zoning Amendment was enacted pursuant to Maryland's CZMA plan—the Maryland Coastal Management Program ("MCMP").

As discussed *supra*, one component of the MCMP is the Critical Area Protection Program ("CAPP"). Local governments have "primary responsibility" to implement their own programs to carry out CAPP's goals, subject to approval by the statewide Critical Area Commission. Md. Code Ann., Nat. Res. § 8-1808(a) (LexisNexis 2000 & Supp. 2005). Pursuant to this delegated authority, Baltimore County enacted a "local protection program" which includes a list of prohibited uses in the County's Chesapeake Bay Critical Areas. Baltimore County Zoning Regs. §§ 101, 105. The Zoning Amendment at issue in this case adds the siting of LNG terminals in Critical Areas to the list of prohibited uses and was, therefore, clearly intended to be part of the County's local protection program. *See* Bill 9-07. Bill 9-07

---

506, 514 (4th Cir. 2005).

specifically defines a liquefied natural gas facility as one "located onshore or in state waters" that receives natural gas that is "imported" or "exported" or "transported in interstate commerce by a *waterborne vessel*." *Id.* (emphasis added).  As noted above, on June 6, 2007, the Maryland Critical Area Commission approved Bill 9-07 as an amendment to Baltimore County's local protection plan.  (*See* Defs.' Post-Hearing Mem. Ex. 1.)

Plaintiffs contend that even with the Critical Area Commission's approval, the Zoning Amendment is not enforceable unless it is specifically approved by the Secretary of Commerce.[7] (Pls.' Mem. Supp. Summ. J. 13.)  They argue that the CZMA requires that formal amendments to a state's statutory coastal management plan be approved by the Secretary and further argue that any changes to the Maryland Coastal Management Program would require formal federal approval.  *See* 16 U.S.C. § 1455(e) (2007).  However, approval by the Critical Area Commission of Bill 9-07, or any other amendment to a local protection plan, does *not* constitute a change in the Maryland Coastal Management Program, but rather the implementation of it at

---

[7] At the hearing held June 6, 2007 on the cross-motions for summary judgment, Plaintiffs argued that the National Oceanic and Atmospheric Administration ("NOAA") would not approve Bill 9-07 as an amendment to Maryland's CZMA plan.  They introduced, as part of Exhibit 1, a letter dated April 5, 2007 from Assistant Attorney General Robert Zarnoch to the Honorable Joan Carter Conway, Chairman of the Maryland Senate Education, Health and Environmental Affairs Committee.  (*See* Pls.' Ex. 1, Motions Hearing, Wednesday, June 6, 2007.)  In his letter, Mr. Zarnoch advised the senator that a state bill aiming to restrict the construction of LNG facilities in Critical Areas would not be approved by NOAA.  (*Id.*)  He cited a document prepared by NOAA in which the agency stated that some state CZMA policies that had been approved would no longer be enforceable as to LNG facilities because of the preemptive effect of the amended Natural Gas Act.  (*Id.*)  As Defendants aptly note, however, the information from NOAA is inadmissible hearsay.  (Defs.' Post-Hearing Mem. 2.)  It is well-established that hearsay evidence is "as inadmissible in support of a summary judgment motion as it would be at trial."  *Stanley Martin Cos., Inc. v. Universal Forest Prods. Shoffner LLC*, 396 F. Supp. 2d 606, 613 (D. Md. 2005) (citing *Md. Highways Contractors Ass'n, Inc. v. Md.*, 933 F.2d 1246, 1251-52 (4th Cir. 1991)).  Thus, the letter from Assistant Attorney General Zarnoch quoting from a NOAA document cannot defeat the Defendants' Motion for Summary Judgment.

the local level.  Quite simply, there is no merit to the suggestion that there must be formal federal

approval of each and every amendment to a local protection plan.[8]

When the Maryland Coastal Management Program was first approved in 1978, it

expressly delegated authority to the local jurisdictions to create and implement individual

protection plans.  *See* Md. Code Ann., Nat. Res. § 8-1808(a) (LexisNexis 2000 & Supp. 2005).

Thus, the Secretary of Commerce was fully aware that the MCMP did not set forth all the details

necessary to implement a statewide plan under the CZMA.  Rather, the Secretary approved the

plan with knowledge that local governments in Maryland would have the authority to create and

amend individual plans with oversight by the Critical Area Commission to ensure that the local

plans are consistent with statewide goals.  Baltimore County's local protection program, in

particular, has been amended several times since its inception with the approval of the Critical

Area Commission.  (*See* Carroll Aff. Ex. C.)  Once approved by the Commission, these

amendments are enforceable at the state and local levels; they "are not (and since 1978 have not)

been submitted to the Department of Commerce for approval."  (*Id.* ¶ 10.)  For practical reasons

as well, it would take a great deal of time for NOAA to approve every minor amendment made

to local coastal protection plans around the country.  Congress could not have intended to place

such a burden on the agency.  Thus, the Zoning Amendment at issue does not need to be

approved by NOAA in order to become enforceable.

In its earlier opinion in *AES I*, this Court held that the first zoning amendment was clearly

_____

[8] In 2005, the Maryland Department of Natural Resources received approval from the
National Oceanic and Atmospheric Administration for routine program changes to the Coastal
Facilities Review Act portion of the Maryland Coastal Management Program.  (*See* Defs.' Mem.
Supp. Summ. J. Ex. 2.)

preempted by the Natural Gas Act, but specifically noted an exception with respect to the states' delegated authority under the Coastal Zone Management Act, the Clean Air Act, and the Clean Water Act. *See* 470 F. Supp. 2d at 597 (citing 15 U.S.C.§ 717b(d) (2007)).  The Zoning Amendment, as set forth in Bill 9-07, has been approved by the Maryland Critical Area Commission to become part of Baltimore County's local protection program under the Critical Area Protection Program.  This Court holds that this second zoning amendment is within the delegated authority under the Coastal Zone Management Act and is enforceable as part of the State of Maryland's Coastal Management Program.  Therefore, unlike the first statute in *AES I*, the Zoning Amendment, as set forth in Bill 9-07, is not preempted by the Natural Gas Act.

## II.  Constitutional Challenge

Alternatively, Plaintiffs have moved for summary judgment on the ground that the Zoning Amendment is unconstitutional on its face because it violates the dormant Commerce Clause of the United States Constitution.  As this Court noted in *AES I*, "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."  *United States v. Salerno*, 481 U.S. 739, 745 (1987).  In *AES I*, this Court held that the previous zoning amendment was preempted by the Natural Gas Act and that, therefore, there were no circumstances under which the zoning amendment could be constitutionally valid.  470 F. Supp. 2d at 601.  In light of the fact that the second zoning amendment is *not* preempted by the Natural Gas Act, any facial challenge to Bill 9-07 must satisfy the standard set forth in the *Salerno* case.  For the following reasons, this Court finds that Bill 9-07 is constitutional on its face.

The Commerce Clause provides that "Congress shall have Power To . . . regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3.  Although the Commerce Clause expressly confers power on Congress to regulate interstate and foreign commerce, the "dormant" Commerce Clause implicitly restricts states from placing an undue burden on interstate and foreign commerce.  *See Beskind v. Easley*, 325 F.3d 506, 514 (4th Cir. 2005).  The Supreme Court recently explained the test to be applied when a law is challenged under the dormant Commerce Clause:

> To determine whether a law violates this so-called "dormant" aspect of the Commerce Clause, we first ask whether it discriminates on its face against interstate commerce.  In this context, "discrimination" simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.  Discriminatory laws motivated by "simple economic protectionism" are subject to a "virtually *per se* rule of invalidity," which can only be overcome by a showing that the State has no other means to advance a legitimate local purpose.

*United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 127 S. Ct. 1786, 1793 (2007) (internal quotations and citations omitted); *see also Granholm v. Heald*, 544 U.S. 460, 476 (2005).  A nondiscriminatory law can violate the dormant Commerce Clause as applied if it "unduly burdens interstate commerce."  *General Motors Corp. v. Tracy*, 519 U.S. 278, 287 (1997).  These principles also apply with respect to foreign commerce, where the emphasis remains on "federal uniformity" in "international relations and with respect to foreign intercourse and trade."  *See Wardair Canada, Inc. v. Fla. Dep't of Revenue*, 477 U.S. 1, 8 (1986) (holding that "state regulation that is contrary to the constitutional principle of ensuring that the conduct of individual States does not work to the detriment of the Nation as a whole, and thus ultimately to all of the States, may be invalid under the unexercised Commerce Clause").

A.        **Discrimination Against Interstate & Foreign Commerce**

Bill 9-07 provides generally that LNG facilities are prohibited in Chesapeake Bay

Critical Areas.  A liquefied natural gas facility is defined as

> [a] natural gas facility located onshore or in state waters that is used
> to receive, unload, load, store, transport, gasify, regasify, liquefy, or
> process natural gas that is imported to the United States from a
> foreign country, exported to a foreign country from the United States,
> or transported in interstate commerce by a *waterborne vessel*.

*Id.* (emphasis added).  Plaintiffs contend that the prohibition on LNG facilities, as defined by the

bill, is discriminatory for two reasons.  First, they argue that it "singles out, for special,

disfavored treatment, LNG terminals that receive LNG in *foreign* commerce; that export LNG in

*foreign* commerce; or that receive and store LNG that is transported in *interstate* commerce . . .

[y]et it places no restrictions whatsoever on LNG terminals that operate solely intrastate."  (Pls.'

Mem. Supp. Summ. J. 14-15 (emphasis in original).)  Second, at the hearing held June 6, 2007,

Plaintiffs' counsel argued that Bill 9-07 discriminates on its face by prohibiting facilities that

receive LNG transported by waterborne vessel while permitting facilities that receive LNG via

pipeline or truck.  Plaintiffs' two arguments are misplaced, because the Zoning Amendment

neither benefits in-state economic interests nor unduly burdens out-of-state interests.

The purpose behind liquefying natural gas, in the Plaintiffs' own words, is to "facilitate[]

the efficient transportation of natural gas from world gas-producing areas to consumers in the

United States."  (*See* Am. Compl. ¶ 9.)  Although the Plaintiffs submitted some evidence[9] that at

---

[9] In their correspondence to the Court following the hearing on June 6, 2007, Plaintiffs
submitted an excerpt from Baltimore Gas and Electric Company's ("BG&E") Form 10-K, filed
with the U.S. Securities and Exchange Commission.  BG&E explained that it maintains a
"liquefied natural gas facility" to liquefy and store natural gas for use during times of heavy
energy usage or emergencies.  (*See* Pls.' Correspondence Supplementing Record Ex. 1 (Paper

least one energy company in Maryland liquefies and stores natural gas in a facility for use during hours of peak demand, a practice known as "peak-shaving," Bill 9-07 does not confer a "benefit" on such facilities because they do not serve the same function as LNG facilities like the one Plaintiffs intend to build.  In addition, as Defendants note, the peak-shaving facility to which Plaintiffs refer is located in Baltimore City and would not be affected by Baltimore County Bill 9-07.  (Defs.' Sur-Reply 1; Carroll Suppl. Aff. ¶ 4, June 11, 2007.)  The Supreme Court has held that "any notion of discrimination assumes a comparison of substantially similar entities." *General Motors Corp.*, 519 U.S. at 298 (upholding differential taxation of natural gas produced by private and public utilities).  The Court has also "never deemed a hypothetical possibility of favoritism to constitute discrimination that transgresses constitutional commands." *Associated Indus. v. Lohman*, 511 U.S. 641, 654 (1994).  In the absence of any actual intrastate LNG facilities located in Baltimore County, there is no "comparison" to make for dormant Commerce Clause purposes.  Thus, under the *Salerno* standard, Bill 9-07 does not currently discriminate against any out-of-state interests.

Prohibiting facilities that receive or ship LNG by waterborne vessel likewise does not benefit any in-state interests, because pipelines and trucks are often used to transport LNG *across state lines*.  Rather, the prohibition on LNG facilities that import LNG by waterborne vessel is consistent with and narrowly tailored to the goals of Maryland's Critical Areas Protection Program.  That program may address the risk of spillage into the Chesapeake Bay of liquefied natural gas as well as the dangers of coastal degradation.

Just as Bill 9-07 does not confer a benefit on any in-state interests, it does not unduly

---

No. 26).)  Plaintiffs note that this facility is located in Baltimore City's Critical Area.  (*Id*. at 1.)

burden out-of-state interests.  It only affects environmentally sensitive coastal areas, designated as Critical Areas, in Baltimore County.  This Court, in its earlier opinion in *AES I*, held that the Federal Energy Regulatory Commission has exclusive authority over the siting of LNG terminals so long as the siting does not conflict with laws enacted pursuant to one of the three environmental statutes specifically recognized by Congress.  470 F. Supp. 2d at 597.  It is within the clear, appropriate exercise of its authority that the State of Maryland and Baltimore County may enact provisions within the context of those environmental statutes.  Any company, be it foreign or domestic, may construct LNG facilities in Maryland that import and export LNG across state lines and internationally as long as the construction of those facilities is not in contravention of the environmental statutes which are clearly noted in the 2005 amendments to the Natural Gas Act.

Accordingly, this Court finds that Bill 9-07 does not discriminate on its face in violation of the dormant Commerce Clause, and the Plaintiffs have failed to satisfy the *Salerno* standard for a facial challenge to the Zoning Amendment.

### B.     Undue Burden on Interstate & Foreign Commerce

Finally, this Court examines whether Bill 9-07 unduly burdens interstate or foreign commerce, as applied.  "Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."  *Pike v. Bruce Church, Inc*., 397 U.S. 137, 142 (1970); *see also Omega World Travel, Inc. v. Mummagraphics, Inc*., 469 F.3d 348, 356 (4th Cir. 2006).

Bill 9-07 has only a small effect on interstate and foreign commerce.  By restricting the

locations where an LNG terminal can be built, Bill 9-07 does have some impact on interstate and foreign transportation of LNG.  However, as discussed *supra*, the bill only prohibits the siting of LNG terminals in a small percentage of coastal land.  LNG facilities can be built anywhere else in Baltimore County besides Critical Areas.  This Court previously held in *AES I* that any efforts by the County to exercise a prohibition on the construction of LNG facilities are unenforceable as preempted by the Natural Gas Act, unless they are enacted pursuant to the State's authority under the three environmental statutes enumerated by Congress.  *See AES I*, 470 F. Supp. 2d at 597 (citing 15 U.S.C. § 717b(d)(2007)).  Thus, any burden that Bill 9-07 imposes on interstate and foreign commerce with respect to the LNG industry is minimal at most.

This minimal burden is also clearly outweighed by a matter of local public interest: protection of the coastal areas surrounding the Chesapeake Bay.  By incorporating the Zoning Amendment in Baltimore County's local protection program, the Maryland Critical Area Commission made a determination that the bill would also assist in carrying out statewide goals articulated in the Critical Areas Protection Program, such as "minimiz[ing] adverse impacts on water quality that result from pollutants that are discharged from structures" near the Chesapeake Bay.  Md. Code Ann., Nat. Res. § 8-1808 (LexisNexis 2000 & Supp. 2005).  Finally, protection of coastal areas is also a matter of national concern.  Congress expressly stated in the Natural Gas Act that "nothing in [the NGA] affects the rights of States under . . . the Coastal Zone Management Act. . . ."  15 U.S.C. § 717b(d) (2007).  This indicates a national interest in protecting the integrity of coastal areas.  This interest, held at the local, state, and national level, clearly outweighs the minimal burden on interstate and foreign commerce.

Accordingly, this Court holds that Bill 9-07 does not discriminate on its face or unduly

burden interstate and foreign commerce in violation of the dormant Commerce Clause.

<u>CONCLUSION</u>

For the reasons stated above, the Plaintiffs' Motion for Summary Judgment seeking declaratory and permanent injunctive relief will be DENIED, and the Defendants' Motion for Summary Judgment will be GRANTED.  A separate Order and Judgment follows.

<u>/s/</u>_____
Richard D. Bennett
United States District Judge

Date:  June 22, 2007